**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------X
SQUAREX PHARMACEUTICAL
CORPORATION, formerly known as
SQUAREX LLC,

                Plaintiff,

      v.

EF HUTTON LLC, a division of
BENCHMARK INVESTMENTS, LLC,

                Defendant.
--------------------------------------------------------X

Civil Action No. 24-6866

**COMPLAINT**

**JURY TRIAL
DEMANDED**

## <u>COMPLAINT</u>

Plaintiff SQUAREX PHARMACEUTICAL CORPORATION, formerly known as SQUAREX LLC, by and through its attorneys, the Law Offices of Victor M. Feraru, as and for its Complaint against Defendant, EF HUTTON LLC, a division of BENCHMARK INVESTMENTS, LLC, upon information and belief, alleges:

### <u>PRELIMINARY STATEMENT</u>

1.    In the matter before this honorable court, we present a case that starkly illustrates a breach of contract, underscored by a profound disparity in power and responsibility. The Plaintiff, SQUAREX PHARMACEUTICAL CORPORATION, formerly known as SQUAREX LLC (hereinafter referred to as "SQUAREX"),  a company of noble purpose and dedication, has tirelessly worked towards alleviating the suffering of tens of millions afflicted with medical ailments.

2.      This company placed its trust, and indeed its very future, in the hands of Defendant EF HUTTON LLC, a division of BENCHMARK INVESTMENTS, LLC (hereinafter "EF HUTTON"), an investment bank, with the explicit agreement that Defendant EF HUTTON would fulfill its contractual obligations to utilize their best efforts—*at least attempt to*—raise necessary funds and facilitate an Initial Public Offering ("IPO") to officially make shares of its company available to the general public.

3.      Regrettably, this trust was not only unmet but was handled with what can only be described as gross negligence, including but not limited to willful and deliberate misconduct by Defendant EF HUTTON.

4.      Indeed, this breach transcends mere negligence—***it is a clear and egregious violation of the contract, characterized by deliberate actions and inactions that have significantly harmed Plaintiff SQUAREX***.

5.      The consequences of this breach are not abstract; they have tangible, detrimental effects on Plaintiff's operations, its central and noble mission to serve millions, and its financial health.

6.      Defendant EF HUTTON's actions, or rather, the lack thereof, constitute a material breach of contract. This breach is not merely a simple oversight or a failure to perform due to unforeseen circumstances; instead, it is a *calculated disregard* for the contractual obligations and the devastating impact such disregard would have on Plaintiff.

7.      Defendant's failure to act, coupled with its gross negligence, willful misconduct, and deliberate breach, *directly* led to Plaintiff's inability to go public as planned, resulting in significant financial losses, missed opportunities, and reputational damage—causing irreparable harm. This case, at its core, is about holding Defendant accountable for their actions and

inactions that have not only breached the aforementioned contract but have also jeopardized Plaintiff's central mission and financial stability. Accordingly, Plaintiff seeks not only to recover the damages suffered but also to send a clear message that gross negligence, willful misconduct, and deliberate breach of contract cannot and will not be tolerated.

8.      The severity of Defendant's breach and the profound impact it has had on Plaintiff is beyond all bounds of decency and well below that the industrial standard of an investment bank.

9.      Plaintiff deserves just compensation for the damages incurred and a reaffirmation of the principle that contracts are to be honored, not disregarded at one's convenience.

10.     This case is a testament to the Plaintiff's resolve to seek justice and accountability in the face of gross negligence and deliberate misconduct by a party that was entrusted with a critical component of its future.

## JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction 28 U.S. Code § 1331.

12.     Venue is properly set in this District under 28 U.S.C. §1391(b) since Defendant transacts business within this judicial district. Likewise, a substantial part of the acts and omissions causing this action occurred in the Southern District of New York. 28 U.S.C. § 1391(b). Additionally, the contract at issue expressly states that the specified venue for any disputes with respect to the agreement is within the jurisdiction of the Southern District of New York.

13.     Consistent with the Due Process Clause of the Fifth and Fourteenth Amendments, the Court has personal jurisdiction over Defendant because Defendant is present in the Southern District of New York, so requiring an appearance therein does not offend traditional notions of

fair play and substantial justice. *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Further, all of Plaintiff's claims arise from conduct and agreements that the Defendant engaged in in the Southern District of New York. Moreover, the parties jointly agreed to the venue being in the Southern District of New York.

14.     This court also has personal jurisdiction over Defendant under and consistent with the Constitutional requirements of Due Process in that Defendant, acting through their agents or apparent agents, committed one or more of the following:

a. transacts any business within the state or contracts anywhere to supply goods or services in the state; or

b. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or

c. commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if it

d. regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or

e. expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or

f. owns, uses or possesses any real property situated within the state.

*See* N.Y. C.P.L.R. 302 (McKinney).

**<u>JURY DEMAND</u>**

15.     The Plaintiff demands a jury trial in this action.

## PARTIES

16.     Plaintiff  SQUAREX PHARMACEUTICAL CORPORATION, formerly known as SQUAREX LLC (hereinafter referred to as "SQUAREX"), is a corporation formed under the laws of the State of Delaware, with a corporate home located at the address known as 7460 Pinehurst Road, St. Paul, Minnesota 55115.

17.     Defendant EF HUTTON LLC, a division of BENCHMARK INVESTMENTS, LLC (hereinafter "EF HUTTON"), is a limited liability company formed under the laws of New York with an address listed as 590 Madison Avenue, 39th Floor, New York, New York 10022.

## RELEVANT FACTS

18.     At all times relevant to this Complaint, Defendant EF HUTTON is a brokerage firm regulated by the rules and regulations of the Financial Industry Regulatory Authority (FINRA).

19.     On or about February 8, 2022, after extensive discussions, the Plaintiff and Defendant EF HUTTON entered into an agreement (hereinafter, the "Agreement") wherein Defendant agreed to act as lead underwriter, deal manager and investment banker for Plaintiff's initial public offering ("IPO") on the New York Stock Exchange.

20.     Of note, the Agreement and the anticipated IPO was conditioned upon the satisfactory completion by Defendant EF HUTTON of its due diligence investigation and analysis of the Company's officers, financial statements and projected financial statements as required by the Securities and Exchange Commission pursuant to meeting all regulatory requirements for the IPO.

21.     Additionally, the Agreement also included terms that expressly stated that Plaintiff may terminate the Agreement on or after the two-hundredth seventieth (270th) day

following the Effective Date upon thirty (30) days prior written notice. On the other hand, the Agreement expressly stated that Defendant may terminate the Agreement on or after the one hundred twentieth (120th) day following the Effective date upon thirty (30) days prior written notice.

22.    At all times relevant to this Complaint, Plaintiff exercised the requisite due diligence on their part pursuant to satisfying the regulatory requirements with respect to the Agreement. The IPO was then publicly announced with a public filing of an Amended S-1 registration statement with the U.S. Securities and Exchange Commission on January 17, 2023, which was publicly filed with the consent of Defendant EF Hutton. As a result, IPO was scheduled to commence upon final approval of the S-1 registration statement by the Securities and Exchange Commission, which was imminent, and upon Defendant EF HUTTON finishing the requisite steps for Plaintiff to lawfully have its IPO as planned.

23.    At all times relevant to this Complaint, however, it was discovered the Defendant EF HUTTON made effectively no attempt to contact investors pursuant to facilitating the scheduled IPO, despite numerous requests by Plaintiff SQUAREX over the duration of the engagement to contact investors and set up meetings of Plaintiff SQUAREX with investors, and despite representing and warranting that it would undergo its best efforts to contact investors for the IPO.

24.    Additionally, on January 23, 2023, Jack Teranova, Head of Investment Banking of Defendant EF HUTTON by email to Hugh McTavish, CEO of SQUAREX, announced that Defendant EF HUTTON was terminating the contract with SQUAREX immediately and would make no efforts under the contract.

25.    On January 25, 2023, agents of Defendant EF HUTTON including Jack Teranova discussed with Plaintiff's Chief Executive Officer and others at a teleconference between the Parties that Defendant had made significant changes to their company, and that Defendant reiterated that it was terminating the contract and would make no efforts to conduct an IPO for Plaintiff, despite being warned by Hugh McTavish, Plaintiff's Chief Executive Officer that Defendant's termination without notice was in clear violation of the contract, which required providing thirty (30) days prior written notice.  Defendant EF Hutton's agents in that call and in an email dated January 23, 2023, stated that they were still performing work for other IPOs and attempting to raise money for other IPOs, just not Plaintiff's.

26.    Due to the abrupt nature of Defendant EF HUTTON'S breach of the Agreement, Plaintiff was left in a particularly vulnerable position as Plaintiff, despite being well within the projected timeline within the regulatory requirements to have the IPO as scheduled, now faced having to delay the IPO by—at least—two months or more. More specifically, Plaintiff needed the proceeds of the IPO to resume its clinical trials needed to get approval of its drug SQX770 (hereinafter, "SQX770"), which had been significantly effective for preventing oral herpes or cold sore outbreaks, a condition that afflicts about 50 million Americans, in three of three clinical trials through a major Phase 2 clinical trial conducted at Harvard University and Stanford University, as well as in other clinical sites. As a result, every day that funding for Plaintiff was delayed was one more day until SQX770 could receive FDA approval, and therefore one lost day of sales in the period of patent exclusivity.  Thereby, every day the IPO is delayed, Plaintiff was projected to lose—***conservatively***—ONE MILLION ($1,000,000.00) DOLLARS ***per day***.

27.    On or about May 19, 2023, following Defendant's breach, Plaintiff was left with no other option but to withdraw its IPO plans. Of note, but for Defendant's breach, Plaintiff—by

and through adhering to every regulation set forth by the Securities and Exchange Commission—was on track to have its IPO happen as scheduled as initially planned, since it had at that time received "no comments" from the Securities and Exchange Commission, meaning it could execute its IPO, except that it no longer had an investment bank due to Defendant EF Hutton's breach.

28.     As a result of the IPO withdrawal, Plaintiff has suffered irreparable reputational damages, especially since the IPO was already publicly announced and scheduled, leaving potential investors and other investment banks and companies in the pharmaceutical field who would be potential partners to erroneously believe that Plaintiff has serious issues with either its business, its financials, or its products.

29.     At all times relevant to this Complaint, Plaintiff has *already* had a potential underwriter *withdraw* its offer to underwrite Plaintiff's IPO following the announcement of the IPO withdrawal, citing a false belief created by Defendant's breach that Defendant attempted to find investors (which they did not do) and were unable to and thereby falsely believing that there must be significant concerns with Plaintiff's business and its appeal to investors.

30.     At all times relevant to this Complaint, as a result of Defendant's breach, Plaintiff has been caused to suffer significant pecuniary losses of *millions of dollars* in their attempts to mitigate the effects of Defendant's breach, as well as hundreds of thousands of dollars paid to or owed to agents for the now-withdrawn IPO.

## CAUSES OF ACTION

### AS AND FOR A FIRST CAUSE OF ACTION
### BREACH OF CONTRACT

31.    Plaintiff restates the above-mentioned paragraphs with the same force and effect as if stated herein.

32.    Plaintiff and Defendant EF HUTTON entered into a valid agreement for Defendant EF HUTTON to perform services related to the necessary steps pursuant to facilitating Plaintiff's IPO.

33.    Plaintiff duly performed their obligations pursuant to the agreement by performing the necessary due diligence pursuant to facilitating the now-withdrawn IPO, including but not limited to providing the necessary business disclosure documents and other relevant information to the appropriate regulator.

34.    Defendant EF HUTTON breached their obligations by failing to satisfactorily perform the services as promised in the agreement.

35.    Specifically, Defendant EF HUTTON breached its contractual obligations by abruptly terminating the agreement without providing the required thirty (30) days notice prior to the IPO, placing Plaintiff in a significant vulnerable position concerning its business reputation.

36.    In addition, Defendant EF HUTTON breached the contract by making little or no attempt to contact investors, to arrange meetings with investors, or solicit any investors for the IPO.

37.     As a result of Defendant EF HUTTON'S breach, Plaintiff, by and through its delayed and now-withdrawn IPO, has been caused to suffer pecuniary losses of millions of dollars based on conservative estimates of its projected revenue and profit.

38.     As a result of Defendant EF HUTTON'S breach, Plaintiff has been damaged in an amount exceeding the jurisdictional limits of all lower Courts which would otherwise have jurisdiction, including but not limited to irreparable reputational harm with potential investors and customers, *which has already* adversely affected Plaintiff's ability to acquire replacement underwriters.

WHEREFORE, PLAINTIFF SQUAREX respectfully demands judgment against Defendant EF HUTTON, in favor of Plaintiff, in an amount to be determined by the Court, but in no event less than SIXTY MILLION ($60,000,000.00) DOLLARS together with any further such relief as this Court finds just and equitable.

## AS AND FOR A SECOND CAUSE OF ACTION
## GROSS NEGLIGENCE AND WILLFUL MISCONDUCT

39.     Plaintiff restates the above-mentioned paragraphs with the same force and effect as if stated herein.

40.     Defendant EF HUTTON, a brokerage firm regulated by FINRA, while operating as the exclusive agent, advisor and underwriter of Plaintiff, owed Plaintiff a fiduciary duty to exercise reasonable care over the course of their performance throughout the service agreement with Plaintiff concerning the IPO, including but not limited to the duty of loyalty and the duty of good faith and fair dealing.

41.    Defendant EF HUTTON breached its duty of care by making no or essentially no attempt to recruit investors pursuant to facilitating the IPO.

42.    Defendant EF HUTTON *further* breached its duty of care by abruptly terminating the agreement without adequate cause or justification—without providing the required notice—constituting a material breach of their fiduciary duty and thereby placing Plaintiff in an extremely vulnerable position with respect to its IPO, and eventually leading to its withdrawal.

43.    Defendant EF HUTTON, solely through the fault of their conduct, proximately and actually caused Plaintiff significant harm, subjecting Plaintiff to irreparable reputational harm by and through causing potential investors and partners to believe that Plaintiff's business is inherently unstable or lacks financial integrity.

44.    Defendant EF HUTTON'S above-mentioned conduct evinces a reckless disregard for the rights of Plaintiff or smacks of intentional wrongdoing, as Defendant—as the exclusive agent, advisor and underwriter owes a fiduciary duty to Plaintiff to act in the best interest of Plaintiff—willfully and intentionally failed to fulfill *any* of its obligations to Plaintiff with respect to its IPO, despite awareness of the *millions* of dollars at stake and the fact that a withdrawn IPO would cause Plaintiff irreparable harm to both their business and reputation among the investment community.

45.    As a result of Defendant EF HUTTON'S conduct, Plaintiff had incurred substantial costs, in remitting payments to its agents for a now-withdrawn IPO as well as pursuing replacement underwriters and investors to mitigate the effects of Defendant EF HUTTON'S breach, including but not limited to lost profits from *each day* of delay to getting funded and thereby getting its drug on the market.

WHEREFORE, PLAINTIFF SQUAREX respectfully demands judgment against Defendant EF HUTTON, in favor of Plaintiff, in an amount to be determined by the Court, but in no event less than SIXTY MILLION ($60,000,000.00) DOLLARS together with any further such relief as this Court finds just and equitable.

## PRAYER FOR RELIEF

WHEREFORE,  Plaintiff requests the following relief:

a.      As to the First Cause of Action, PLAINTIFF demands judgment against DEFENDANT EF HUTTON, in favor of PLAINTIFF, in an amount to be determined by the Court but in no event less than SIXTY MILLION ($60,000,000.00) DOLLARS.

b.      As to the Second Cause of Action, PLAINTIFF demands judgment against DEFENDANT EF HUTTON, in favor of PLAINTIFF, in an amount to be determined by the Court but in no event less than SIXTY MILLION ($60,000,000.00) DOLLARS.

c.      Costs, disbursements and legal fees associated with prosecuting this action.

d.      Such other and further relief that this Court deems to be just and equitable.


Dated: September 11, 2024
       New York, New York

LAW OFFICE OF VICTOR M. FERARU

Respectfully submitted,

/s/Victor M. Feraru
Victor M. Feraru, Esq.
57 West 57th Street, 4th Fl.
Suite 407
New York, New York 10019
T: (516) 699-2285
E: victor@vicslaw.com

**Verification**

VICTOR M. FERARU, Esq., attorney for the above-mentioned Plaintiff, an attorney duly licensed to practice law before the courts of the State of New York, under penalties of perjury, upon information and belief, that I have read the attached Complaint and believe the same to be true and correct. The basis of my belief is the file maintained by my office, and interviews with Plaintiff.

The reason the Plaintiff has not verified themself is that they are currently not located in the County in which I have my office.


Dated: September 11, 2024
      New York, New York                /s/Victor M. Feraru
                                      Victor M. Feraru, Esq.